**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YUANLAN SWEI, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALLERGAN PLC, BRENTON L. SAUNDERS, NESLI BASGOZ, JOSEPH H. BOCCUZI, CHRISTOPHER W. BODINE, ADRIANE M. BROWN, CHRISTOPHER J. COUGHLIN, CAROL ANTHONY DAVIDSON, THOMAS C. FREYMAN, MICHAEL E. GREENBERG, ROBERT J. HUGIN, and PETER J. MCDONNELL,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff YuanLan Swei ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Class Action Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder class action brought by Plaintiff on behalf of herself and all other public stockholders of Allergan plc ("Allergan" or the "Company") against Allergan and the members of Allergan's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction,

pursuant to which Allergan will be acquired by AbbVie Inc. ("AbbVie") through its wholly owned subsidiary Venice Subsidiary LLC ("Acquirer Sub") (the "Proposed Transaction").

2. On June 25, 2019, Allergan and AbbVie issued a joint press release announcing they had entered into a Transaction Agreement dated June 25, 2019 (the "Merger Agreement") to sell Allergan to AbbVie. Under the terms of the Merger Agreement, each Allergan stockholder will be entitled to receive for each Allergan ordinary share: (i) $120.30 in cash, and (ii) 0.8660 of a newly issued share of AbbVie common stock (together, the "Merger Consideration"). Based on the closing price of AbbVie's common stock of $78.45 on June 24, 2019, the Proposed Transaction has an equity value of approximately $63 billion.

3. On September 16, 2019, Allergan filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Allergan stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Allergan management's estimates for the amount and timing of cost savings and related expenses and synergies expected to result from the Proposed Transaction; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan"); and (iii) potential conflicts of interest faced by Company insiders. The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act, as Allergan stockholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

4. In short, unless remedied, Allergan's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's U.S. Administrative Headquarters are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Allergan.

9. Defendant Allergan is an Ireland corporation with its principal executive offices located at Clonshaugh Business and Technology Park, Coolock, Dublin D17 E400, Ireland. The Company is a global pharmaceutical leader focused on developing, manufacturing and commercializing branded pharmaceutical, device, biologic, surgical, and regenerative medicine

products. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "AGN."

10. Defendant Brenton L. Saunders ("Saunders") has been President and Chief Executive Officer ("CEO") of the Company since July 2014, Chairman of the Board since October 2016 and a director of the Company since July 2014.

11. Defendant Nesli Basgoz ("Basgoz") has been a director of the Company since July 2014.

12. Defendant Joseph H. Boccuzi ("Boccuzi") has been a director of the Company since 2017.

13. Defendant Christopher W. Bodine ("Bodine") has been a director of the Company since 2009.

14. Defendant Adriane M. Brown ("Brown") has been a director of the Company since 2017.

15. Defendant Christopher J. Coughlin ("Coughlin") has been Lead Independent Director of the Company since October 2016 and a director of the Company since July 2014.

16. Defendant Carol Anthony Davidson ("Davidson") has been a director of the Company since 2018.

17. Defendant Thomas C. Freyman ("Freyman") has been a director of the Company since 2018.

18. Defendant Michael E. Greenberg ("Greenberg") has been a director of the Company since 2018.

19. Defendant Robert J. Hugin ("Hugin") has been a director of the Company since 2019.

20. Defendant Peter J. McDonnell ("McDonnell") has been a director of the Company since March 2015.

21. Defendants identified in paragraphs 10-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22. AbbVie is a Delaware corporation with its principal executive offices located at 1 North Waukegan Road, North Chicago, Illinois 60064-6400. AbbVie is a global, research-driven biopharmaceutical company focused on developing advanced therapies in four primary therapeutic areas: immunology, oncology, virology, and neuroscience. AbbVie's common stock is traded on the New York Stock Exchange and the Chicago Stock Exchange under the ticker symbol "ABBV."

23. Acquirer Sub is a Delaware limited liability company and a wholly owned subsidiary of AbbVie.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Allergan common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of

August 5, 2019, there were 328,029,799 ordinary shares of Allergan outstanding. All members of the Class may be identified from records maintained by Allergan or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

27. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

28. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

31. Incorporated in Ireland in May 2013, Allergan is focused on developing, manufacturing and commercializing branded pharmaceutical, device, biologic, surgical and regenerative medicine products for patients around the world. The Company is primarily focused on four key therapeutic areas: medical aesthetics, eye care, central nervous system, and gastroenterology.

32. The Company has recently completed or announced a number of significant business transactions.

33. For example, on April 6, 2018, Allergan completed the acquisition of Elastagen Pty Ltd, a clinical stage medical company developing medical and cosmetic treatments, for $96.1 million plus contingent consideration of up to $165.0 million.

34. On October 24, 2018, Allergan acquired Bonti, Inc., a privately held clinical-stage biotechnology company focused on the development and commercialization of novel, fast-acting neurotoxin programs for aesthetic and therapeutic applications, for $195.0 million plus contingent consideration of up to $90.0 million.

35. On May 7, 2019, the Company announced its first quarter 2019 financial results, including U.S. General Medicine net revenues of $1.25 billion, a 2.1% increase compared to the first quarter of 2018, and International net revenues of $801.5 million, a 1.3% increase compared to the first quarter of 2018. Defendant Saunders commented on the Company's financial results, stating:

> Our first quarter results reflected continued growth of our Core Business, which increased 4.4 percent year-over-year across our four key therapeutic areas. Growth of key products such as BOTOX® Cosmetic, BOTOX®Therapeutic, VRAYLAR®, JUVÉDERM® and Lo LOESTRIN® offset declines in products that lost exclusivity and products which were divested in 2018. . . . Many key R&D

programs have made steady progress and we now anticipate five regulatory approvals over the next 18 months. I appreciate the talented Allergan colleagues around the world who are bringing our products to patients who need them and positioning Allergan for a successful 2019 and beyond.

**The Proposed Transaction**

36. On June 25, 2019, Allergan and AbbVie issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NORTH CHICAGO, Ill. and DUBLIN, June 25, 2019 /PRNewswire/ -- AbbVie Inc. (NYSE: ABBV) and Allergan plc (NYSE: AGN) announced that the companies have entered into a definitive transaction agreement under which AbbVie will acquire Allergan in a cash and stock transaction for a transaction equity value of approximately $63 billion, based on the closing price of AbbVie's common stock of $78.45 on June 24, 2019.
>
> "This is a transformational transaction for both companies and achieves unique and complementary strategic objectives," said Richard A. Gonzalez, chairman and chief executive officer, AbbVie. "The combination of AbbVie and Allergan increases our ability to continue to deliver on our mission to patients and shareholders. With our enhanced growth platform to fuel industry-leading growth, this strategy allows us to diversify AbbVie's business while sustaining our focus on innovative science and the advancement of our industry-leading pipeline well into the future."
>
> "This acquisition creates compelling value for Allergan's stakeholders, including our customers, patients and shareholders. With 2019 annual combined revenue of approximately $48 billion, scale in more than 175 countries, an industry-leading R&D pipeline and robust cash flows, our combined company will have the opportunity to make even bigger contributions to global health than either can alone," said Brent Saunders, chairman and chief executive officer, Allergan. "Our fast-growing therapeutic areas, including our world class medical aesthetics, eye care, CNS and gastrointestinal businesses, will enhance AbbVie's strong growth platform and create substantial value for shareholders of both companies."
>
> **Strategic Rationale**
>
> - **New growth platforms and leadership positions to diversify and expand revenue base:** The combined company will consist of several attractive franchises with leadership positions across immunology, hematologic oncology, medical aesthetics, neuroscience, women's health, eye care and virology. Allergan's product portfolio will be enhanced by AbbVie's commercial strength, expertise and international infrastructure.

- **Immediate scale and enhanced profitability for AbbVie's growth platform:** AbbVie's enhanced growth platform, comprised of growing and durable franchises across highly-attractive therapeutic areas, is expected to grow at a high-single digit annual growth rate well into the next decade, from more than $30 billion in 2020.

- **Financially attractive with immediate EPS accretion:** This transaction is expected to be 10% accretive to adjusted earnings per share over the first full year following the close of the transaction, with peak accretion of greater than 20%.[1] ROIC is expected to exceed AbbVie's cost of capital within the first full year.

- **Significant cash flow generation:** The success and scale of the combined commercial business ensures funding capacity and flexibility for simultaneous robust pipeline investment, debt reduction and capital return to shareholders. The combined companies generated $19 billion in operating cash flow in 2018.

**Structure and Governance**

Upon completion of the transaction, AbbVie will continue to be incorporated in Delaware as AbbVie Inc. and have its principal executive offices in North Chicago, Ill. AbbVie will continue to be led by Richard A. Gonzalez as chairman and chief executive officer. Two members of Allergan's Board, including chairman and chief executive officer, Brent Saunders, will join AbbVie's Board upon completion of the transaction.

**Transaction Details**

Under the terms of the Transaction Agreement, Allergan Shareholders will receive 0.8660 AbbVie Shares and $120.30 in cash for each Allergan Share that they hold, for a total consideration of $188.24 per Allergan Share.[2] The transaction represents a 45% premium to the closing price of Allergan's Shares on June 24, 2019.

AbbVie anticipates that the Acquisition will provide annual pre-tax synergies and other cost reductions of at least $2 billion in year three while leaving investments in key growth franchises untouched. The synergies and other cost reductions will be a result of optimizing the research and early stage portfolio, and reducing overlapping R&D resources (~50%), driving efficiencies in SG&A, including sales and marketing and central support function costs (~40%), and eliminating redundancies in manufacturing and supply chain, and leveraging procurement spend (~10%). The synergies estimate excludes any potential revenue synergies.[3]

AbbVie is expected to generate significant annual operating cash flow, which will support a debt reduction target of $15 to $18 billion before the end of 2021, while

also enabling a continued commitment to Baa2/BBB or better credit rating and continued dividend growth.

It is expected that, immediately after the closing of the Acquisition, AbbVie Shareholders will own approximately 83% of AbbVie on a fully diluted basis and the Allergan Shareholders will own approximately 17% of AbbVie on a fully diluted basis.

The transaction is subject to the Conditions set out in Appendix III of the Rule 2.5 Announcement, including certain regulatory approvals and approval by Allergan's Shareholders.

**Insiders Interests in the Proposed Transaction**

37.     Allergan insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Allergan.

38.     Notably, Allergan directors and executive officers stand to reap substantial financial benefits for securing the deal with AbbVie.  According to the Proxy Statement:

> Prior to the effective time, Allergan may grant retention and/or transaction incentive bonuses to employees of Allergan (other than Mr. Saunders). The aggregate amount of such retention and/or transaction incentive bonuses shall not exceed $65 million, consisting of $50 million pursuant to the terms of the Transaction Agreement, plus an additional $15 million that was expressly agreed to by Allergan and AbbVie after their entry into the Transaction Agreement.

Proxy Statement at 64.  Further, pursuant to the terms of the Company's 2019 Annual Incentive Program, if a change in control of Allergan occurs during 2019, participants will be paid a prorated annual incentive program award.  *Id.*  The following table sets forth the value of the change in control compensation the Company's named executive officers stand to receive in connection with the Proposed Transaction:

| Name | Cash ($)(1) | Equity ($)(2) | Pension/ NQDC ($)(3) | Perquisites/ Benefits ($)(4) | Tax Reimbursement ($)(5) | Total ($) |
|---|---|---|---|---|---|---|
| Brenton L. Saunders | 14,882,877 | 23,625,381 | — | 154,037 | — | 38,662,295 |
| Matthew W. Walsh | 5,049,863 | 8,887,319 | — | 91,942 | — | 14,029,124 |
| William Meury | 5,797,055 | 7,093,432 | — | 90,004 | — | 12,980,491 |
| C. David Nicholson | 5,797,055 | 6,925,304 | — | 67,587 | — | 12,789,946 |
| A. Robert D. Bailey | 4,769,315 | 4,826,886 | — | 90,206 | — | 9,686,407 |

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

39. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Allergan's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

40. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Allergan management's estimates for the amount and timing of cost savings and related expenses and synergies expected to result from the Proposed Transaction; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan; and (iii) potential conflicts of interest faced by Company insiders. Accordingly, Allergan stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Expected Synergies Resulting From the Proposed Transaction*

41. The Proxy Statement is materially deficient because it fails to disclose material information relating to the expected synergies resulting from the Proposed Transaction.

42. In determining to enter into the Proposed Transaction the Board considered various factors it believes support its determinations and recommendations, including "the

potential to benefit from the synergies expected to result from the transaction." Proxy Statement at 46.

43. Additionally, the Proxy Statement sets forth that in arriving at its fairness opinion J.P. Morgan "reviewed . . . the estimated amount and timing of cost savings and related expenses and synergies expected to result from the proposed transaction as prepared by the management of Allergan (the "Synergies")." *Id.* at 50.

44. The Proxy Statement, however, fails to disclose and quantify the estimated amount and timing of cost savings and related expenses and synergies expected to result from the Proposed Transaction as prepared by the management of Allergan. Without this material information Allergan stockholders are unable to adequately assess the potential benefits from the Proposed Transaction as prepared by the management of Allergan and utilized by J.P. Morgan in arriving at its fairness opinion and the Board in determining to enter into the Proposed Transaction and recommending the Proposed Transaction to Allergan stockholders.

45. The omission of this information renders the statements in the "Recommendation of the Allergan Board of Directors and Allergan's Reasons for the Transaction," "Allergan Unaudited Prospective Financial Information" and "Opinion of J.P. Morgan Securities LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning J.P. Morgan's Financial Analyses*

46. The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion. However, the descriptions of J.P. Morgan's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, Allergan's public stockholders are

unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Allergan's stockholders.

47. With respect to J.P. Morgan's *Public Trading Multiples Analysis* and *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed by J.P. Morgan.

48. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for Allergan and AbbVie, the Proxy Statement fails to disclose: (i) the terminal period unlevered free cash flow estimates for Allergan and AbbVie; (ii) the implied terminal value multiples resulting from the analyses; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 8.5% to 9.5%.

49. With respect to J.P. Morgan's *Value Creation Analysis*, the Proxy Statement fails to disclose the estimated present value of the Synergies (net of estimated transaction expenses) as reflected in synergy estimates Allergan's management provided to J.P. Morgan for use in connection with its analysis.

50. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

51. The omission of this information renders the statements in the "Opinion of J.P. Morgan Securities LLC" and "Allergan Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

52. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's insiders.

53. For example, although the Proxy Statement discloses that "[t]wo members of Allergan's Board, including chairman and chief executive officer, Brent Saunders, will join AbbVie's Board following closing of the transaction" (*id.* at 69), the Proxy Statement fails to disclose whether any members of Allergan management are expected to continue with the management of the post-close company.  The Proxy Statement further fails to disclose the details of all employment and retention-related discussions and negotiations, including discussions and negotiations related to certain cash retention and/or transaction bonuses that the Company may grant to its employees (other than defendant Saunders), that occurred between AbbVie and Allergan's executive officers or directors, including who participated in all such communications, when they occurred and their content.  The Proxy Statement also fails to disclose whether any of AbbVie's prior proposals or indications of interest mentioned management retention in the combined company.

54. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this information renders the statements in the "Background of the Transaction" and "Interests of Certain Persons in the Transaction" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

56. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Allergan will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

57. Plaintiff repeats all previous allegations as if set forth in full.

58. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

59. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the synergies of the combined company, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan, and potential

conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

61. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

62. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

63. Plaintiff repeats all previous allegations as if set forth in full.

64. The Individual Defendants acted as controlling persons of Allergan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Allergan, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

67. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Allergan's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Allergan, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Allergan stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 20, 2019

|  | By /s/ Aaron Rubin |
|---|---|
|  | **RUBIN & MENDLOWITZ, LLC** |
|  | Aaron Rubin |
|  | 2623 Hooper Avenue |
|  | Brick, New Jersey 08723 |
|  | Tel: (516) 590-0544 |
|  | Fax: (516) 506-0832 |
|  |  |
| **OF COUNSEL:** | *Attorneys for Plaintiff* |

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: raymond@bespc.com

*Attorneys for Plaintiff*